**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

                Plaintiff,

 GUPREET S. KHERHA,

            Plaintiff-Intervenor

v.

UNITED GALAXY, INC., d/b/a TRI-COUNTY LEXUS,


           Defendant/Third Party Plaintiff,

TK WORLDWIDE, INC. and FULL THROTTLE
TRAINING CORP.

           Third Party Defendants.

Civ. No.  10-4987 (ES)


**O P I N I O N**

*Appearances by:*

U.S. Employment Opportunity Commission
JADHIRA V. RIVERA
SUNU P. CHANDRY
ELIZABETH GROSSMAN
33 Whitehall Street, Fifth fl.
New York, NY 10004

JEFFREY C. BURSTEIN
1 Newark Center, 21st fl.
Newark, NJ 07102

     *Attorneys for Plaintiff*

The Sikh Coalition
GURJOT KAUR
40 Exchange Place, Suite 728
New York, NY 10005

Bhalla Law Firm, LLC
RAVINDER S. BHALLA
33-41 Newark Street, Suite 4A
Hoboken, NJ 07030

> *Attorneys for Plaintiff-Intervenor*

Jackson Lewis LLP
DENA E. EPSTEIN
JOHN F. TRATNYEK
220 Headquarters Plaza
East Tower, 7th fl.
Morristown, NJ 07960

> *Attorneys for Defendant/Third Party Plaintiff*

**DEBEVOISE, Senior District Judge**

This is an action under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, brought on behalf of the U.S. Employment Opportunity Commission, alleging that United Galaxy, Inc. d/b/a/ Tri-County Lexus ("Defendant"), an auto-dealership, discriminated against Intervener-Plaintiff Gurpreet Kherha by refusing to grant him a reasonable religious accommodation and failing to hire him as a sales associate.  The matter comes before the Court on Defendant's motion for summary judgment.  For the following reasons, Defendant's motion is denied.

## I.  BACKGROUND

### A.  Factual History

Mr. Kherha has been a practicing member of the Sikh faith since birth.  As a practicing Sikh, Mr. Kherha has not cut his hair since he was born, attends church regularly, and reads from the holy book every morning.  He also prominently wears a turban and maintains an unshaven beard as articles of his faith.  Mr. Kherha applied to be a sales associate for Defendant.

A third party independent recruiting and training company, T.K. Worldwide, Inc. ("T.K.") recruited and provided general sales training to individuals who were interested in obtaining positions as sales associates in auto dealerships. T.K. engaged the services of independent contractor Full Throttle Training Corp., and specifically its owner Dominick Pupo, to provide the three days of training on Wednesday, Thursday, and Friday in late February 2008. Mr. Kherha participated in this training program, and paid T.K. and Full Throttle $294 for training materials. During the initial screen interview, Mr. Pupo asked Mr. Kherha if he was Sikh, to which Mr. Kherha responded that he has been a member of the Sikh faith all his life. (Kherha Dep. 33:15-34:12.)

On the Thursday afternoon of training, Defendant's General Sales Manager, Clark Nelson, spent approximately 40-45 minutes with the group of ten candidates, during which time he interviewed the group as a whole. First, Mr. Nelson introduced himself and asked each candidate one general sales question. Following that, eight of the ten candidates were each given the opportunity to discuss in under two minutes, how an inanimate object provided to them by Mr. Nelson could be used to better the company and how the candidate would be able to sell it. It is undisputed that Mr. Nelson saw Mr. Kherha's articles of faith, in particular his uncut beard and his turban. It is undisputed that Mr. Nelson and Mr. Kherha never had any conversations outside the presence of the group.

After Mr. Nelson left the training room, Mr. Kherha alleges that Mr. Pupo stated to the interview group: "[H]ope that went well, . . . but now they are going to be making a decision on who's going to receive a position." (Id. at 87:16-21.) The group then waited for approximately forty minutes before any decision was made.

3

Mr. Kherha contends that while waiting to see who would be selected for the position, Mr. Pupo asked him privately, in a five minute conversation, "whether I kept my facial hair for religious reasons and I said to him, yes, I did keep my . . . hair for religious reasons, it's because I'm a Sikh and it's part of my religion.  And he went on to ask me whether or not I would be – I think he used the words open or willing to the idea if I was – if I would trim or cut, I don't know the exact terminology, but short it in some way, the length of it, in order to obtain a job.  Which I told him absolutely not, and that it was a part of my religion, and that I would not, in any way, cut or trim my beard to obtain a job." (Id. at 92:13-93:2.)

Mr. Kherha also testified that considering Mr. Pupo knew he was Sikh from the first day they met, it seemed to him that someone was asking Pupo to ask that question. (Id. at 93:22-25.) Although Mr. Nelson denies having asked Mr. Pupo to ask Mr. Kherha a question about shaving his beard (Nelson Dep. 30:22-24), Mr. Pupo reported to Mr. Nelson when he conducted training, and when or if a reasonable accommodation was needed.  Mr. Nelson also admitted that "[t]here is really no process" during the training period to handle the need for a reasonable accommodation. (Id. at 36:14.)

In contrast, Mr. Pupo testified that Mr. Nelson asked him "to ask the gentleman if he would be able to shave off his beard." (Pupo Dep. 26:13-15.)  Mr. Kherha then informed Mr. Pupo that "he could not accommodate that request based on his religious beliefs." (Id. at 26:23-24.)  Mr. Pupo then "[c]onveyed that information to the sales manager." (Id. at 27:5-6.) Specifically, Mr. Pupo testified that Mr. Nelson said to him, "Okay, but you know we have a corporate policy that says we don't allow facial hair. . . [t]his has nothing to do with religion, it's just our corporate policy." (Id. at 27:16-24; 37:17-22.)  According to Mr. Pupo, Mr. Nelson acknowledged the religious aspect and responded, "I understand that and it has nothing to do

with religion, it's just we have a corporate policy." (<u>Id.</u> at 37:17-22.)  According to Mr. Pupo, he informed Mr. Kherha of Defendant's no beard policy immediately after his conversation with Mr. Nelson regarding Mr. Kherha's religious beliefs that precluded him from shaving his beard. (<u>Id.</u> at 38:22-39:8.)

According to the EEOC and Mr. Kherha, Mr. Nelson interviewed Mr. Kherha, and then sent a recruiter, Mr. Pupo, to ask Mr. Kherha whether he would shave his beard for the job. When Mr. Nelson learned through Mr. Pupo that Mr. Kherha could not shave his beard because of his sincerely held religious beliefs, Mr. Nelson informed Mr. Pupo of the company's no-beard policy and of Defendant's resulting refusal to hire Mr. Kherha.  It is undisputed that Mr. Kherha never spoke directly with Mr. Nelson about shaving or trimming his facial hair, or about his religion.  Indeed, Mr. Kherha and Mr. Pupo testified that Mr. Nelson asked Mr. Pupo to inquire about his beard.  Additionally, Defendant's Response to the Request for Admissions further provides that Mr. Nelson asked Mr. Pupo to inquire whether or not Mr. Kherha would shave his beard in order to obtain employment with Defendant.  (Rivera Dec., Ex. 5 (Def. Resp. to RFAs) No. 7) ("Admit [ ] that Pupo was asked to ask Kherha whether he would be willing to shave if offered employment.").

Mr. Nelson denies the entire episode altogether.  Mr. Nelson denies asking Mr. Pupo to inquire of Mr. Kherha's beard.  (Nelson Dep. 47:20-22.).  Additionally, Mr. Nelson asserts that Mr. Pupo never told him that Mr. Kherha would not shave his beard.   Mr. Nelson also testified that Mr. Pupo never advised him that Mr. Kherha would require an accommodation for his beard if hired, and that Mr. Nelson was unaware the Mr. Kherha would want any type of accommodation. (<u>Id.</u> at 20-23, 48:2-5, 71:6, 77:23-25.)

According to Bryan Mendelson, Defendant's General Manager and Rule 30(b)(6) corporate witness, the purpose of the no beard policy is a general guideline to avoid "trendy styles." (Mendelson Dep. 98:3-7.)  The no-beard policy applies to Tri-County Lexus and Toyota Universe; it applies to all car dealerships under the Bob Ciasulli Auto Group. (Rivera Dec. Exs. 9, 10.)  The no-beard policy also applies to job applicants (Nelson Dep. at 42:7-1-13), and provides no exceptions for individuals who maintain beards for religious purposes (Rivera Dec. Exs. 9, 10.)  The no-beard policy is still in effect.  (Mendelson Dep. 85:8-22.)  It does not include a written policy for candidates to request accommodations. (Id. at 77:7-23.)  Mr. Nelson testified that he does not believe there is a process in place to request a reasonable accommodation. (Nelson Dep. 34:24-25; 35:1-4; 36:14-17; 37:2-6.)  Mr. Mendelson testified that training on discrimination and harassment is provided annually to managers. (Mendelson Dep. 110:15-22.)

Thus, the first factual issue is Mr. Nelson's involvement in communicating with Mr. Kherha the conflict of his beard and the corporate policy.  The next factual issue is if and when Mr. Kherha was told that Defendant would not hire him.

Mr. Kherha believes that seven out of the ten candidates were hired on Thursday because they were handed leather portfolios by Mr. Pupo with Lexus car materials, the type of portfolio usually given to new car owners.  During this distribution, Mr. Pupo congratulated them by saying "welcome to Lexus." (Kherha Dep. at 104:16-25, Def. 56.1 Facts ¶ 85.)  Mr. Kherha also testified that Mr. Pupo told seven out of ten interviewees in the training room to come back the following day to learn what they would be doing in their Lexus sales position, but that he was not one of the seven trainees invited to return. (Id. at 106:20-107:25.)  According to Mr. Kherha, Mr. Pupo told him and two other individuals that Defendant did not hire not to be discouraged, and that they would hear back from him regarding an opportunity at Toyota Universe.  (Id. at

108:9-22.)  Mr. Kherha testified that Mr. Pupo then spoke with him privately and told him that Mr. Nelson was "in love with" what Mr. Kherha had to say and how he presented himself, but unfortunately Defendant has a no-beard policy. (Id. at 110:15-111:4.)

In turn, Mr. Pupo denies that Defendant made any hiring decisions on Thursday, and denies distributing related portfolios.  According to Mr. Pupo, Mr. Nelson interviewed everybody individually on the last day of training, which was Friday.  (Pupo Dep. 43:2-4.) Similarly, Mr. Nelson testified that Mr. Pupo would have asked the candidates to come in for the interviews that Friday.  (Nelson Dep. 67:3-7.)   Mr. Pupo indicated that he did not know why Mr. Kherha failed to appear on Friday, and denies that he advised him not to appear. (Pupo Dep. 31:2-9.)  Mr. Nelson testified that had Mr. Kherha appeared on Friday for training, he would have been interviewed by Mr. Nelson and would have been considered for employment, even if he was not able to shave for religious reasons. (Nelson Dep. 78:11-19.)  Further, any trainees not hired by dealership management were notified by Mr. Pupo and not the management, because management did not want to get involved with explaining the refusal.  (Rivera Dec. Ex. 13 (Pupo letter to Court, April 29, 2011, ECF Doc. 26).)

Defendant contends that it did not know that Mr. Kherha needed an accommodation, and that it would have accommodated him if he had only provided Defendant with the opportunity to do so.  Of note, Defendant does not allege that Mr. Kherha was not qualified to be a sales associate.  Defendant purports that it "was unaware of Mr. Kherha's religion and/or what religious accommodations a Sikh would require as Mr. Kherha had no discussions with Defendant about these items." (MSJ Br. at 2.)  Defendant also argues that Mr. Kherha had no reason to believe that interviews were conducted on Thursday, and argues that interviews were only provided on Friday.  According to Defendant, the reason Mr. Kherha was not hired was

because he did not appear to interview on Friday.  The EEOC's and Mr. Kherha's version of events are clearly contrary to Defendant's assertions.  Again, the EEOC and Mr. Kherha contend that Mr. Kherha was told his beard conflicted with Defendant's no beard policy pursuant to Mr. Nelson's indications via Mr. Pupo, and that Mr. Kherha was specifically not hired on Thursday following the group interview and not invited to return the following day.

**B.  Procedural History**

On November 3, 2008, Mr. Kherha filed a charge of discrimination with the EEOC.  (See EEOC Charge of Discrimination, Epstein Cert., Ex. A.) Therein, Mr. Kherha explained that he was recruited by T.K. to apply for a position as a car salesman at Tri-County Lexus.  However, at the end of his second day of training, following a group interview, the following occurred:

> Mr. Pupo asked me why I kept a beard and whether it was a religious requirement.  I explained to Mr. Pupo that as a practicing member of the Sikh religious faith, I am required to keep my hair uncut.  I further explained that the cutting of my hair, including facial hair, would violate my religious beliefs and practices as a Sikh.  Mr. Pupo then asked me if I was willing to shave my beard in order to obtain a job with Tri-country Lexus.  I told him I was not willing to accept this condition of employment.
>
> Mr. Pupo then left the room.  Upon his return, Mr. Pupo announced the persons who had been selected for sales positions at Tri-County Lexus.  I was not among the individuals selected.
>
> Mr. Pupo then took me aside and told me that Tri-County Lexus's General Manager, Clark Nelson, stated I was "exactly what they were looking for" in a salesperson, that I was "well qualified," "well educated," and I "interviewed better than anyone else in the training group. [sic]  Mr. Pupo then went on to explain to me that Tri-County Lexus could not hire me because their parent company/franchisor, Lexus of America, has a corporate policy prohibiting salespersons from maintaining facial hair.  Mr. Pupo further indicated that Mr. Nelson had contacted Lexus of America's corporate headquarters to determine if an exception could be made for me, but was told that no exceptions are permitted.

EEOC investigated the claim and filed a Complaint on September 28, 2010 alleging that Defendant violated Title VII of the Civil Rights Act of 1994 and Civil Rights Act of 1991 ("Title VII") by failing to employ Mr. Kherha due to unwillingness to accommodate his religion and failure to hire.  With the permission of the Court, on February 25, 2011, Mr. Kherha filed an intervening complaint alleging violations of Title VII and the New Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, *et seq.*

Defendant's answer included a third-party complaint against recruiter/training T.K., Mr. Pupo, and Full Throttle Training Corp.   Default was entered against T.K. on April 14, 2011. Default against Mr. Pupo was also entered, but vacated on May 18, 2011.

Oral argument on Defendant's motion for summary judgment was heard on June 17, 2013.

## II. DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of  law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact. Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2

F.3d 529, 533 (3d Cir. 1993). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

> [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

However, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999). See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

Moreover, the nonmoving party must show by competent evidence that factual disputes regarding material issues of fact exist. "[O]nly evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995).

**B. Analysis**

**1. Failure to Accommodate**

To establish a *prima facie* case of a failure to accommodate claim, the employee must show that:  (1) he has a sincere religious belief that conflicts with a job requirement; (2) he told the employer about the conflict; and (3) he suffered an adverse employment action for failing to comply with the conflicting requirement. Wilkerson v. New Media Technology Charter School

Inc., 522 F.3d 316, 319 (3d Cir. 2008).  Only the second and third prongs are at issue here.

Under Title VII, once an employee makes a *prima facie* showing, the burden shifts to the

employer to demonstrate that it offered a reasonable accommodation, or that it could not do so

because of a resulting undue hardship.  See Shelton v. Univ. of Medicine & Dentistry of New

Jersey, 223 F.3d 220, 225 (3d Cir. 2000).  Under the New Jersey Law Against Discrimination,

the employer does not have this choice and must make a good faith effort in making a reasonable

accommodation and demonstrate undue hardship if it is unable to provide such an

accommodation.  N.J.S.A. §10:5-12(q)(1) (It is unlawful discrimination for an employer to

impose any condition that would violate a sincerely held religious belief "unless, after engaging

in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the

employee's religious observance or practice without undue hardship. . . ."  See also Taylor v.

Phoenixville Sch. Dist., 184 F.3d 296, 317 (3d Cir. 1999) (" . . . an employer who receives

proper notice cannot escape its duty to engage in the interactive process. . .").

Mr. Kherha's sincerely-held religious belief that he must maintain an untampered with,

uncut beard directly conflicts with Defendant's no-beard policy.  Indeed, Defendant's General

Manager and Rule 30(b)(6) corporate witness, Bryan Mendelson, admitted that although Mr.

Kherha appeared neat and professional, his beard would not "pass" Defendant's no-beard policy.

(EEOC 56, Facts ¶166.)

Defendant purports that it lacked knowledge about the conflict between Mr. Kherha's

religious beliefs and Defendant's no-beard policy, thus arguing that a *prima facie* failure to

accommodate claim cannot be established based on the undisputed material facts.  In oral

argument, counsel for Defendant argued that although Mr. Kherha wears a turban and an

untampered beard, his religion was not readily apparent because not all Sikhs wear these

religious affects.  This is an oblique argument and avoids the relevant point – Mr. Kherha's garb clearly indicates that he is a person of faith, or at least should have put Defendant on sufficient notice to inquire further.   Moreover, the facts establish that Mr. Pupo knew of Mr. Kherha's faith through the initial screening interview, and that he notified Mr. Nelson of his religious precept to wear an untampered beard.

An employer is on notice of a candidate's religion when "an employer has enough information to make it aware a conflict exists between the individual's religious practice or belief and a requirement for applying for or performing the job."  See e.g., Shelton v. Univ. of Med & Dentistry of New JerseuShelton v. Univ. of Med & Dentistry of New Jersey, 223 F.3d 220, 225 (3d Cir. 2000) (rejecting defendant's claim that it was not on notice about plaintiff's religious beliefs because of her failure to provide a note from her pastor where plaintiff claimed she notified defendant of her religion);  Sistrunk v. Camden County Workforce Inv. Bd., No. 05-1506, 2007 WL 1175101, at *4 (D.N.J. Apr. 18, 2007) (denying summary judgment on the grounds of lack of notice of religious conflict where Rastafarian plaintiff mentioned to his supervisor that he could not cut his hair because of his "way of life."); see also EEOC v. Abercrombie & Fitch Stores, Inc., 798 F. Supp. 2d 1272, 1285 (N.D. Okla. 2011) (holding that the employer was on sufficient "notice" of a Muslim teen's religious belief that she must wear a hijab in public at all times in that she wore the hijab to her job interview.)

Defendant looks to a case arising from the  United States District Court of the Southern District of Alabama, Baaqee v. Brock & Bleving Const. Co., 2000 U.S. Dist. LEXIS 9862, *16 (S.D. Ala. 2000), to support the proposition that it was not put on notice of Mr. Kherha's religious conflict.  While the Court is not bound to decisions reached by other district courts, Baagee is nonetheless inapposite here.  Therein, the court reasoned the plaintiff's failure to

accommodate claim failed where he contended that his Muslim faith "should have been obvious" because of his habits.  Specifically, the plaintiff explained, "I don't cure, I don't drink, I don't smoke, I don't joke around, you know, and more of an easy-going, peaceful person.  And it's different, see, a person that's more into – what I'm into is different than what everybody else is into." Id. at *17.  Additionally, the plaintiff stated that he wore a Crescent Star ring which symbolizes his religion.  Id. The court found that these indicators were not sufficient to put the plaintiff on notice of his need for a religious accommodation.  Id.

Baaquee is of no use here, however, where Mr. Kherha's unshaven beard and turban were prominent.  Moreover, Mr. Kherha testified that during the initial screen interview, Mr. Pupo asked Mr. Kherha if he was Sikh, to which Mr. Kherha responded affirmatively.  Furthermore, according to both Mr. Kherha and Mr. Pupo, Mr. Pupo notified Mr. Nelson of the religious conflict, to which Mr. Nelson responded that there was a clear no-beard corporate policy.  Indeed, Mr. Pupo testified that Mr. Nelson said to him, "Okay, but you know we have a corporate policy that says we don't allow facial hair. . . [t]his has nothing to do with religion, it's just our corporate policy." (Pupo Dep. 27:16-24; 37:17-22.)

Taking the facts in the light most favorable to Mr. Kherha and the EEOC, no accommodations were provided, nor was information of a method to request accommodations provided.  Defendant's motion for summary judgment must be denied because a reasonable finder of fact could conclude that Defendant was given notice of Mr. Kherha's need for a religious accommodation here but failed to provide one, and therefore suffered an adverse employment action.

Defendant argues that any statements made or repeated by Mr. Pupo based on his firsthand knowledge are inadmissible hearsay because he is not an agent of Defendant.  Federal

Rule of Evidence 801(d)(2)(D)  provides that "a statement is not hearsay if – [it] is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  The purpose of the hearsay rules is to exclude testimonial evidence where the parties are not able to cross examine the declarant to test the veracity of the statement.  That is not the case here, where the parties have had an opportunity to depose Mr. Nelson, Mr. Kherha, and Mr. Pupo, and the fact-finder will have the opportunity to gauge each witness's sincerity and credibility.

Mr. Pupo's statements are admissible as agency admissions, despite that he is an independent contractor.  Significant involvement, either as an advisor or other participant in the process leading to an employment decision, suffices to establish Mr. Pupo's "agency" for purposes of admitting statements under Fed. R. Ev. 801(d)(2)(D).  For example, in EEOC v. Watergate at Landmark Condominium, the Fourth Circuit Court of Appeals found that certain statements made by a chairman and member of a condominium association's recreation committee were admissible on behalf of the condominium association, despite the fact that neither was an official or employee of the association, that they were merely resident-volunteers on the advisory committee, and that the association's Board of Directors alone had the ultimate decision-making authority in employment decisions.  24 F.3d 635, 640 (4th Cir. 1994), writ den., 513 U.S. 866 (1994).  The federal appeals court reasoned that the members' "involvement in the process [ ] was palpable, though concededly not that of ultimate decisionmakers.  Significant involvement, either as advisor or other participant in a process leading to a challenged decision, may suffice to establish 'agency' for this purpose; it is not necessary that the declarant be the actual final decisionmaker."  Id.

Defendant urges the Court to consider that T.K. and by extension Full Throttle had absolute control over the manner and selection of individuals recruited to attend the training; that Defendant had no input in how the training was conducted and which candidates were referred for interviews; and that T.K. and Full Throttle reaped the entire financial benefit of the recruitment because the students paid training fees directly to them.  Defendant further argues that "[b]y extension, Full Throttle is retained by T.K. so there is a less tenuous, if any, connection between Defendant and Full Throttle and Full Throttle and its owner Pupo.". (MSJ Br. at 10-11.)

However the facts establish that Mr. Pupo was hired to recruit, train and present candidates for consideration.  Not only did Mr. Pupo prepare the candidates for consideration, but he also facilitated a group interview for Mr. Nelson on the second day of training; undisputedly delivered messages back and forth on Mr. Nelson's behalf concerning which candidates were or were not hired; and delivered message back and forth on Mr. Nelson's behalf to and from Mr. Kherha concerning Mr. Kherha's willingness to shave and conform his religious precepts for company policy.  Indeed, Defendant admitted that Mr. Pupo was asked to inquire whether or not Mr. Kherha would be willing to shave if offered employment.  (Rivera Dec., Ex. 5 (Def. Resp. to RFAs) No. 7) ("Admit [ ] that Pupo was asked to ask Kherha whether he would be willing to shave if offered employment.").   Mr. Pupo's significant involvement in the decision-making process therefore suffices to establish his agency.

Moreover, even if he were to be considered a non-agent independent contractor, Defendant will still be liable for foreseeable representations made by Mr. Pupo under Defendant's apparent authority.  "Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has

authority" despite the absence of an actual agency relationship.  AT&T v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1439-40 (3d Cir. 1994) (quoting Barticheck v. Fidelity Union Bank/First Nat'l State, 680 F. Supp. 144, 148-49 (D.N.J. 1988).  "Thus, although 'when dealing with an independent contractor, no [master/servant] relationship exists, . . . this relationship is not necessary to the application of the [apparent authority] doctrine.'" Id. (internal reference omitted).

Under the doctrine of apparent authority, liability is imposed "not as the result of the reality of a contractual relationship but rather because of the actions of a principal or an employer in somehow misleading the public into believing that the relationship or the authority exists." Id. (quoting Arthur v. St. Peters Hosp., 169 N.J. Super. 575 (N.J. Super. Ct. Law. Div. 1979)); see also Sears Mortage Corp., 134 N.J. 326, 338 (1993) ("Even if a person is not an 'actual agent,' he or she may be an agent by virtue of apparent authority based on manifestations of that authority by the principal.").  "The crucial question is what representations were made to the third party . . . " Id. (quoting Amritt v. Paragon Homes, Inc., 474 F.2d 1251, 1252 (3d Cir. 1973).  "Under the doctrine of apparent authority, the district court should [ ] look[] to the principal's actions and the third parties' reasonable beliefs." Id.

Defendant argues that apparent authority is absent here because that "T.K. and Full Throttle through Pupo at all times identified themselves separately from Defendant whether in Pupo's introduction, on the training receipt or in Pupo's repeated testimony that he is not involved in hiring decisions.  Plaintiff even admitted 'at the end of the day [he is] sure that the decision process [for hiring] was left on an actual Tri-County employee.'" (MSJ Br. at 14.)

However, at Defendant's direction, Mr. Pupo notified all candidates of the final decision. Moreover, Mr. Pupo delivered messages on Mr. Nelson's behalf.  Mr. Pupo's involvement in the

hiring process extended beyond simply screening and training prospective candidates.  Even if Mr. Pupo were not the final decision-maker, he acted on behalf of Mr. Nelson by advancing and rejecting certain candidates in the hiring process.  In Mr. Kherha's case, Mr. Nelson delivered messages via Mr. Pupo regarding Mr. Kerah's willingness to modify his beard to conform with the company's no-beard policy.  Defendant cannot hide its colorable discriminating behavior behind the cloak of an individual contracted to do its bidding.

In conclusion, with respect to the failure to accommodate Title VII and NJLAD claims, because the accounts submitted by the EEOC, Mr. Kherha, and Mr. Pupo clearly contrast with Mr. Nelson's denial of these statements, the motion for summary judgment must be denied because of the existence of genuine issues of material fact.  Defendant cannot avoid that conclusion by attempting to exclude relevant and admissible evidence of agency admissions.

**2.  Refusal to Hire**

To establish a *prima facie* claim for failure to hire under Title VII and the NJLAD, a plaintiff must show: (1) that he belongs to a protected category; (2) that he applied for and was qualified for the job; and (3) that he was rejected, despite his qualifications; and (4) that after his rejection, the employer continued to seek applicants from persons with plaintiff's qualifications. Gaston v. State of New Jersey, 298 Fed. Appx. 165, 168 (3d Cir. 2008) (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).  Title VII and the NJLAD employ the same standard to establish a *prima facie* failure to hire claim.  See e.g., Esposito v. Twp. Of Edison, 306 N.J. Super. 280, 703 (App. Div. 1997), cert. den., 156 N.J. 384 (1998) (NJLAD claim analyzed under McDonnell Douglas framework).   If Mr. Kherha meets this initial burden, Defendant must articulate a legitimate, non-discriminatory reason for his rejection.  Anderson v. Exxon Co., 89 N.J. 483, 493 (1982).  Should Defendant articulate a legitimate reason for not employing

Plaintiff, the presumption of discrimination disappears and the burden reverts back to Plaintiff to demonstrate the Company's proffered reason is merely a pretext for religious discrimination. Gerety v. Atlantic City Hilton Casino Resort, 184 N.J. 391, 399 (2005); St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502, 515 (1993).  To show pretext, "[a] plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Silvestre v. Bell Atl. Corp., 973 F. Supp. 475, 483 (D.N.J. 1997).

It is undisputed that Mr. Kherha was qualified for the sales associate position.  Rather, Defendant argues that there is no failure to hire claim here, because Mr. Kherha did not actually apply for the position when he unilaterally decided not to appear on Friday.  Because of his failure to appear, Defendant argues that Mr. Kherha cannot satisfy the *prima facie* test.  In support of this argument, Defendant relies on Mr. Pupo's testimony that he never told Mr. Kherha not to come on Friday.  Defendant again tries to shift the blame from itself to Mr. Pupo, by pointing out that Defendant was not in the training room when the alleged portfolios were distributed.  Additionally, Defendant asserts that interviews with Mr. Nelson were actually held on Friday.  Further, Defendant argues that it has a legitimate, nondiscriminatory reason for not hiring Mr. Kherha when he did not appear for the Friday one-on-one interview.  Defendant argues that Mr. Kherha cannot establish discriminatory animus because he did not appear on Friday for the one-on-one interview out of sheer speculation that he was not hired on Thursday.

Defendant urges the Court to examine cases which are distinct to the facts considered today.  For example, in Jackson-Bey v. Hanslmaier, 115 F.3d 1091, 1097-98 (2d Cir. 1997), a prisoner's claim was dismissed based on lack of standing because the prisoner did not advise the prison of his religious requirements for his sect before alleging religious discrimination.  Here,

the facts indicate that Mr. Kherha did just that.  Second, Defendant looks to <u>Bass v. City of Tacoma</u>, 90 Wa. App. 681, 691 (Wash. Ct. App. 1998), where summary judgment was granted when a trainee did not complete an application for the position, believing that it would be futile because the hiring attorney announced his intent to discriminate against those with brain injuries. Third, Defendant looks to <u>Johnson v. Wheeling-Pittsburgh Steel Corp.</u>, 279 Fed. Appx. 200, 208 (4th Cir. 2008), wherein the plaintiff relied only on speculation that if he applied for the position he would not be accommodated and there was no evidence that the plaintiff ever inquired about or requested an accommodation with respect to the position.  These cases are inapposite because Mr. Kherha applied for the position, completed two days of training, and participated in a group interview but was not among the candidates invited to return the next day for one-on-one interviews after he stated that he would not compromise his religious precept for corporate policy, and no discussion of a reasonable accommodation was pursued.

Defendant also calls the Court's attention to an unpublished decision related to an EEOC complaint for age discrimination.  <u>Carlson v. Twp. Of Alloways</u>, 2009 U.S. Dist. LEXIS 70700, *27 (D.N.J. Aug. 12, 2009).  Therein, a retaliation claim under the NJLAD was analyzed pursuant to the <u>McDonnell Douglas</u> framework.  Defendant submits that <u>Carlson</u> is relevant to the analysis today because "'a number of witnesses testified' and alleged decisionmakers said 'they intended to get rid of older employees' and still this was insufficient to demonstrate pretext and overcome the employer's legitimate non-discriminatory business reason including Plaintiff's failure to attend his interview with management." (Reply Br. at 9.)  <u>Carlson</u> listed the nondiscriminatory reasons which lead to the plaintiff's termination, which could not overcome plaintiff's burden of establish pretext based on animus.  Specifically, a number of performance issues were present there.  <u>See Carlson</u> at *30 (" (1) he failed to perform his job duties

competently; (2) he was a poor manager who harassed subordinates; and (3) he failed to follow the directives of the Township Committee members.").

The reasoning employed by the Fourth Circuit Court of Appeals is more persuasive here, where Mr. Kherha's qualifications were not at issue, and it was reasonable for him to infer that he was out of the hiring process because there was no discussion regarding a possible accommodation.

> Assuming he meets the other three prongs of the McDonnell Douglas test, a plaintiff who has failed to apply for a job may still carry his burden of proof if he can demonstrate that 'he would have applied but for accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected had he actually applied.' *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990). In such a case, a plaintiff is not required to subject himself 'to the humiliation of explicit and certain rejection' and his unwillingness to engage in the futile gesture of formally applying for the position in question is excused. *United States v. Gregory*, 871 F.2d 1239, 1242 (4th Cir. 1989); *see also International Bhd. Of Teamsters v. United States*, 431 U.S. 324, 368, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977) (originating "futile gesture" doctrine).

Brown v. Mclean, 159 F.3d 898, 902 (4th Cir. 1998). Here, according to Mr. Pupo, Mr. Kherha, and even Defendant's Statement of Facts, Mr. Nelson directed Mr. Pupo to inquire about Mr. Kherha's beard and its nonconformity with the no-beard policy. Mr. Pupo later informed Mr. Kherha that he was no longer being considered, and invited seven other candidates to return the next day. Additionally, although Defendant's General Manager, Bryan Mendelson, testified about the procedure to follow for providing reasonable accommodations, Mr. Nelson was not aware of the procedure and in any event failed to follow it.

Taking the facts in the light most favorable to the nonmoving party, a reasonable factfinder could deduce that Defendant's assertion that Mr. Pupo was not hired because he did not return for one-on-one interviews on Friday is pretext for discriminatory animus because he

20

was not provided any information to suggest that a reasonable accommodation could be made when the conflict between Mr. Kherha's religious precept of maintaining an untampered beard and the corporate policy became evident, and when Mr. Kherha was not invited to return the following day while seven other candidates were.  It is undisputed that Mr. Kherha was otherwise qualified for the position.  Again, Defendant tries to exclude the statements by Mr. Pupo as purported hearsay; the Court has addressed this issue above.  Genuine issues of material fact are present and therefore summary judgment must be denied with respect to the failure to hire claim.

### 3.  Punitive Damages

Defendant also moves for summary judgment on Plaintiff's request for punitive damages. Punitive damages are rewarded pursuant to Title VII "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 USCS § 1981a(b)(1).

Similarly, pursuant to the NJLAD, "[p]unitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.  This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence."  N.J.S.A. § 2A:15-5.12(a).  Factors to be considered by the trier of fact include, but are not limited to, "(1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct; (2) The defendant's awareness or reckless disregard of the likelihood that the serious harm at issue would arise from the

defendant's conduct; (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and (4) The duration of the conduct or any concealment of it by the defendant."  N.J.S.A. § 2A:15-5.12(b).

The record indicates, despite Mr. Nelson's denial otherwise, that he was made aware via Mr. Pupo of Mr. Kherha's religious precept to maintain an untampered beard and the conflict with the company's no-beard policy.  Indeed the record suggests that Mr. Nelson directed Mr. Pupo to ask Mr. Kherha if he would be willing to conform to the company's policy as a condition of employment, despite his religious belief.   No reasonable accommodation was pursued.  Of note, Defendant provides training to its managers on an annual basis regarding the company's policy on discrimination and harassment.  Reading the facts in the light most favorable to the non-moving party, Mr. Kherha was not invited to return the following day to continue the hiring process, unlike seven of the other candidates who were invited.  A genuine issue of material fact is evident as to whether Defendant acted in reckless disregard to Mr. Kherha's protected rights.  Therefore, the motion for summary judgment must be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED in full. The Court will enter an order implementing this opinion.


/s/ Dickinson R. Debevoise
**DICKINSON R. DEBEVOISE, U.S.S.D.J.**


**Dated:  June 25, 2013**

22